FLORIDA *v.* MEYERS, aka WEYERS

No. 83–1279.   Decided April 23, 1984

PER CURIAM.

Respondent was charged with sexual battery. At the time of his arrest, police officers searched his automobile and seized several items. The vehicle was then towed to Sunny's Wrecker, where it was impounded in a locked, secure area. Approximately eight hours later, a police officer went to the compound and, without obtaining a warrant, searched the car for a second time. Additional evidence was seized. At the subsequent trial, the court denied respondent's motion to suppress the evidence seized during the second search, and respondent was convicted.

On appeal, the Florida District Court of Appeal for the Fourth District reversed the conviction, holding that even

though respondent conceded that the initial search of the automobile was valid, the second search violated the Fourth Amendment. 432 So. 2d 97 (1983). The court concluded that *Chambers* v. *Maroney*, 399 U. S. 42 (1970), in which this Court held that police officers who have probable cause to believe there is contraband inside an automobile that has been stopped on the road may search it without obtaining a warrant, was distinguishable, stating that "in this case the element of mobility was removed because [respondent's] vehicle had been impounded." 432 So. 2d, at 99. The Florida Supreme Court denied the State's petition for discretionary review, and the State filed the present petition for certiorari. We reverse.*

---

*Even though the District Court of Appeal remanded the case for a new trial, its decision on the federal constitutional issue is reviewable at this time because if the State prevails at the trial, the issue will be mooted; and if the State loses, governing state law, Fla. Stat. § 924.07 (1981); *State* v. *Brown*, 330 So. 2d 535, 536 (Fla. App. 1976), will prohibit it from presenting the federal claim for review. In such circumstances, we have consistently held that "the decision below constitute[s] a final judgment under 28 U. S. C. § 1257(3)." *California* v. *Stewart*, decided with *Miranda* v. *Arizona*, 384 U. S. 436, 497, 498, n. 71 (1966). See *South Dakota* v. *Neville*, 459 U. S. 553, 558, n. 6 (1983); *North Dakota Pharmacy Board* v. *Snyder's Stores*, 414 U. S. 156, 159–164 (1973). See also *Cox Broadcasting Corp.* v. *Cohn*, 420 U. S. 469, 481 (1975).

Respondent contends that we should not review the issue raised by petitioner because "the appellate court reversed [respondent's] conviction on two independent grounds, one of which (restricted cross-examination) petitioner does not contest." Brief in Opposition 2. To the extent that this is an argument that the lower court's judgment is unreviewable because it rests on adequate and independent state grounds, we reject it. First, it is highly questionable whether the District Court of Appeal would have reversed the conviction had it not reversed the trial court's ruling on the suppression motion. The court did state that respondent's cross-examination of the victim had been unduly restricted by the trial court. However, the court's short discussion of this issue was introduced by the observation that "[s]ince the case must be remanded for a new trial we briefly mention another appellate point." 432 So. 2d, at 99. This is hardly a clear indication

The District Court of Appeal either misunderstood or ignored our prior rulings with respect to the constitutionality of the warrantless search of an impounded automobile. In *Michigan* v. *Thomas*, 458 U. S. 259 (1982), we upheld a warrantless search of an automobile even though the automobile was in police custody and even though a prior inventory search had already been made. That ruling controls the disposition of this case. In *Thomas*, we expressly rejected the argument accepted by the District Court of Appeal in the present case, noting that the search upheld in *Chambers* was conducted "after [the automobile was] impounded and [was] in police custody" and emphasizing that "the justification to conduct such a warrantless search does not vanish once the car has been immobilized." 458 U. S., at 261. The District Court of Appeal's ruling that the subsequent search in this case was invalid because the car had been impounded is clearly inconsistent with *Thomas* and *Chambers*. The petition for certiorari is therefore granted, the judgment of the

---

that the cross-examination ruling provided an independent and adequate basis for reversal of the conviction. See *Michigan* v. *Long*, 463 U. S. 1032, 1040–1041 (1983).

Moreover, even if the cross-examination ruling did provide an independent state ground for reversal, we would still be empowered to review the constitutional issue raised by petitioner. The reason we cannot review a state-court judgment resting on adequate and independent state grounds is that "[w]e are not permitted to render an advisory opinion, and if the same judgment would be rendered by the state court after we corrected its views of federal laws, our review could amount to nothing more than an advisory opinion." *Herb* v. *Pitcairn*, 324 U. S. 117, 126 (1945). In the present case, there is no possibility that our opinion will be merely advisory. Even if the District Court of Appeal were to order a new trial solely on the basis of its cross-examination ruling, the admissibility of critical evidence at that trial hinges on the constitutional issue presented for review by petitioner. Thus, our resolution of that issue will affect the proceedings below regardless of how the District Court of Appeal rules on remand. In such circumstances there is no jurisdictional reason why we cannot address the issue presented to us.

District Court of Appeal is reversed, and the case is remanded to that court for further proceedings not inconsistent with this opinion.

*It is so ordered.*

JUSTICE STEVENS, with whom JUSTICE BRENNAN and JUSTICE MARSHALL join, dissenting.

No judicial system is perfect. In this case the Florida District Court of Appeal for the Fourth District appears to have made an error. In the exercise of its discretion, the Florida Supreme Court elected not to correct that error. No reasons were given for its denial of review and since the record is not before us, we cannot know what discretionary factors may have prompted the Florida Supreme Court's decision. This Court, however, finds time to correct the apparent error committed by the intermediate appellate court, acting summarily without benefit of briefs on the merits or argument.

"This Court can only deal with a certain number of cases on the merits in any given Term, and therefore some judgment must attend the process of selection." *Torres-Valencia* v. *United States,* 464 U. S. 44 (1983) (REHNQUIST, J., dissenting). If the error corrected today had been committed by a federal court, the Court's action arguably would be a proper exercise of its supervisory powers over the federal judicial system. See this Court's Rule 17.1(a). Or if the case raised a novel question of federal law on which there was a divergence of opinion, arguably it would be proper for the Court to assume jurisdiction for the purpose of clarifying the law. See this Court's Rules 17.1(b) and (c). Or if there were reason to believe that the state court refused to apply federal precedent because of its hostility to this Court's interpretation of the Constitution, see generally *Cooper* v. *Aaron,* 358 U. S. 1 (1958), we might have an obligation to act summarily to vindicate the supremacy of federal law. No such consideration is present in this case. In fact, the case on which the majority principally relies, *Michigan* v. *Thomas,* 458 U. S.

259 (1982) *(per curiam)*, was itself a summary disposition. Clearly, the law in this area is well settled. That being the case, I see no reason why we cannot leave to the Florida Supreme Court the task of managing its own discretionary docket.[1]

For three other reasons I believe the Court should deny certiorari in cases of this kind. First, our pronouncements

---

[1] The Court does, however, manage to inject legal significance into this otherwise unremarkable case through its discussion of whether the judgment below rests on an independent and adequate state ground. *Ante*, at 381–382, n. The Florida District Court of Appeal found that two errors had been committed by the trial court, one on the Fourth Amendment question and another on a state-law ground regarding the scope of respondent's cross-examination of the complaining witness. This Court states that there is federal jurisdiction in this case because the Florida District Court of Appeal did not provide "a clear indication that the cross-examination ruling provided an independent and adequate basis for reversal of the conviction," *ibid.*, and relies on the "clear statement" rule of *Michigan* v. *Long*, 463 U. S. 1032, 1040–1042 (1983). This is what *Long* held:

"[W]hen, as in this case, a state court decision fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion, we will accept as the most reasonable explanation that the state court decided the case the way it did because it believed that federal law required it to do so. If a state court chooses merely to rely on federal precedents as it would on the precedents of all other jurisdictions, then it need only make clear by a plain statement in its judgment or opinion that the federal cases are being used only for the purpose of guidance, and do not themselves compel the result that the court has reached." *Id.*, at 1040–1041.

In effect, *Long* created a presumption of jurisdiction when the state decision rests "primarily on" or is "interwoven with" federal law. See *id.*, at 1042, and n. 8. Here, the cross-examination ruling in no sense "rested on" or was "interwoven with" federal law. Yet today, by its citation of *Long*, the Court implies that all state courts have some sort of duty to make a plain statement that even their indisputably state-law decisions are independent of any federal question in the case. This apparent extension of *Long* occurs without briefs on the merits or argument; in fact petitioner does not even cite *Long*. It is all the more puzzling since the last paragraph in the Court's footnote is sufficient to support the exercise of jurisdiction over this case without any reliance on *Long*.

concerning our confidence in the ability of the state judges to decide Fourth Amendment questions, see *Allen* v. *McCurry*, 449 U. S. 90 (1980); *Stone* v. *Powell*, 428 U. S. 465 (1976), are given a hollow ring when we are found peering over their shoulders after every misreading of the Fourth Amendment. Second, our ability to perform our primary responsibilities can only be undermined by enlarging our self-appointed role as supervisors of the administration of justice in the state judicial systems. Dispositions such as that today can only encourage prosecutors to file in increasing numbers petitions for certiorari in relatively routine cases, and if we take it upon ourselves to review and correct every incorrect disposition of a federal question by every intermediate state appellate court, we will soon become so busy that we will either be unable to discharge our primary responsibilities effectively, or else be forced to make still another adjustment in the size of our staff in order to process cases effectively. We should focus our attention on methods of using our scarce resources wisely rather than laying another course of bricks in the building of a federal judicial bureaucracy.

Third, and perhaps most fundamental, this case and cases like it pose disturbing questions concerning the Court's conception of its role. Each such case, considered individually, may be regarded as a welcome step forward in the never-ending war against crime. Such decisions are certain to receive widespread approbation, particularly by members of society who have been victimized by lawless conduct. But we must not forget that a central purpose of our written Constitution, and more specifically of its unique creation of a life-tenured federal judiciary, was to ensure that certain rights are firmly secured *against* possible oppression by the Federal or State Governments. As I wrote last Term: "I believe that in reviewing the decisions of state courts, the primary role of this Court is to make sure that persons who seek to *vindicate* federal rights have been fairly heard." *Michigan* v. *Long*, 463 U. S. 1032, 1068 (1983) (emphasis in original) (dissenting opinion). Yet the Court's recent history indicates that, at

least with respect to its summary dispositions, it has been primarily concerned with vindicating the will of the majority and less interested in its role as a protector of the individual's constitutional rights.[2]   Since the beginning of the October 1981 Term, the Court has decided in summary fashion 19 cases, including this one, concerning the constitutional rights of persons accused or convicted of crimes.   All 19 were decided on the petition of the warden or prosecutor, and in all he was successful in obtaining reversal of a decision upholding a claim of constitutional right.[3]   I am not saying that none of these cases should have been decided summarily. But I am saying that this pattern of results, and in particular the fact that in its last two and one-half Terms the Court has been unwilling in even a single criminal case to employ its discretionary power of summary disposition in order to uphold a claim of constitutional right, is quite striking.   It may well be true that there have been times when the Court

---

[2] This trend, unfortunately, does not appear to be limited to the Court's summary dispositions.   See *Long*, 463 U. S., at 1069–1070, and n. 3 (STEVENS, J., dissenting).

[3] The cases, other than this one, are: *Rushen* v. *Spain*, 464 U. S. 114 (1983) *(per curiam)*; *Wainwright* v. *Goode*, 464 U. S. 78 (1983) *(per curiam)*; *California* v. *Beheler*, 463 U. S. 1121 (1983) *(per curiam)*; *Illinois* v. *Batchelder*, 463 U. S. 1112 (1983) *(per curiam)*; *Maggio* v. *Fulford*, 462 U. S. 111 (1983) *(per curiam)*; *Cardwell* v. *Taylor*, 461 U. S. 571 (1983) *(per curiam)*; *Wyrick* v. *Fields*, 459 U. S. 42 (1982) *(per curiam)*; *Anderson* v. *Harless*, 459 U. S. 4 (1982) *(per curiam)*; *United States* v. *Hollywood Motor Car Co.*, 458 U. S. 263 (1982) *(per curiam)*; *Michigan* v. *Thomas*, 458 U. S. 259 (1982) *(per curiam)*; *Fletcher* v. *Weir*, 455 U. S. 603 (1982) *(per curiam)*; *Sumner* v. *Mata*, 455 U. S. 591 (1982) *(per curiam)*; *Wainwright* v. *Torna*, 455 U. S. 586 (1982) *(per curiam)*; *Hutto* v. *Davis*, 454 U. S. 370 (1982) *(per curiam)*; *Harris* v. *Rivera*, 454 U. S. 339 (1981) *(per curiam)*; *Leeke* v. *Timmerman*, 454 U. S. 83 (1981) *(per curiam)*; *Jago* v. *Van Curen*, 454 U. S. 14 (1981) *(per curiam)*; *Duckworth* v. *Serrano*, 454 U. S. 1 (1981) *(per curiam)*.   See also *Board of Ed. of Rogers, Ark.* v. *McCluskey*, 458 U. S. 966, 972–973 (1982) (STEVENS, J., dissenting).

overused its power of summary disposition to protect the citizen against government overreaching. Nevertheless, the Court must be ever mindful of its primary role as the protector of the citizen and not the warden or the prosecutor. The Framers surely feared the latter more than the former.

I respectfully dissent.