UNITED STATES of America, Plaintiff,

v.

James Della RATTA, a/k/a "James Dellaratte," a/k/a "James Rago," Defendant.

No. 90 Cr. 116 (RPP).

United States District Court, S.D. New York.

Aug. 24, 1990.

---

arms and for transporting firearms in interstate commerce in violation of 18 U.S.C. § 922. He now moves to suppress evidence recovered following his arrest, including twenty-one handguns recovered from the automobile which defendant was driving at the time of his arrest, on the ground that the search warrant for the vehicle was defective. For the reasons set forth below, defendant's motion is denied.

## I. FACTS

In December, 1989, several firearms seized during arrests in New York City were traced to the Traffic Circle Flea Market ("the Flea Market") in Dayton, Ohio. Agents of the Bureau of Alcohol, Tobacco, and Firearms ("ATF") of the Department of the Treasury began investigating the sales records kept by the Flea Market, concentrating on Firearm Transaction Reports, ATF Form 4473. Because the records appeared to be inadequately maintained, ATF agents interviewed several persons listed as purchasers on the 4473 forms. The interviewees stated that they had not in fact purchased any firearms from the Flea Market, but that the dealership's proprietor had asked them to sign the forms in return for nominal payments.

Upon questioning, the Flea Market proprietor revealed to ATF agents that over the previous year, he had sold more than 500 handguns to a man known only to him as "Jim." Because Jim did not want any paperwork to be traced to him, he had induced the proprietor to falsify the 4473 forms. The proprietor had provided Jim with ten to twenty handguns three times per month, which Jim indicated he was transporting out of Ohio to somewhere in the East. The agents subsequently identified Jim as James Rago, who resided in Lindenhurst, New York. Upon arrest, Rago was identified as the defendant.

Between December 28, 1989, and January 22, 1990, the Flea Market proprietor cooperated with ATF agents in conducting tape-recorded telephone conversations with defendant. Defendant indicated in these conversations his desire to continue purchasing handguns as well as his desire to

Otto G. Obermaier, U.S. Atty., S.D.N.Y., New York City (Paul A. Engelmayer, Asst. U.S. Atty., of counsel), for the Government.

Ronald Rubinstein, Kew Gardens, N.Y., for defendant.

## OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

The defendant has been indicted for unlawfully engaging in the business of importing, manufacturing and dealing fire-

continue using non-purchasers' signatures on the sales forms.

On Friday, February 9, 1990, the Flea Market proprietor advised ATF agents that Della Ratta was scheduled to pick up approximately twenty-one handguns at 6:00 p.m. that evening. Della Ratta arrived at the Flea Market as expected and was observed leaving a short time later carrying a cardboard box. Defendant's conversation with the proprietor inside the store had been recorded. During their conversation concerning the purchase of the guns, defendant indicated his intention to leave the following morning, Saturday, for New York and be back Monday or Tuesday. The recorded conversation indicates that the proprietor put the guns in the cardboard box.

ATF agents kept Della Ratta under constant surveillance after he left the Flea Market. He returned to his home in the Dayton area that evening and carried the box into the house. The following morning, Saturday, defendant was observed placing what appeared to be the same box in the tire well of the rear of his car, a blue 1979 Chrysler Volare station wagon. Defendant then drove the car to New York under the constant surveillance of ATF agents. After crossing the George Washington Bridge and entering the Bronx at approximately 8:15 p.m., Della Ratta was stopped and placed under arrest.

Agents impounded defendant's vehicle and searched it the following morning pursuant to a search warrant issued by United States magistrate Naomi Reice Buchwald upon the affidavit of ATF Special Agent William Temple. Agents searching the vehicle found approximately twenty-one handguns and approximately 125 rounds of ammunition. Sixteen of the weapons and a portion of the ammunition were located in the cardboard box in the tire well. Five other handguns and the remainder of the ammunition were found in a paper bag located between the rear seat and the cargo section of the car.

**1.** Pursuant to the Court's directions, the United States Attorney has provided the Court with transcripts of five tape-recorded conversations between the Flea Market proprietor and the

## II. DISCUSSION

### 1. Request for a *Franks* Hearing

Defendant has asked the Court to hold a hearing to determine whether certain statements in the affidavit in support of the warrant to search defendant's vehicle were intentionally false or recklessly untrue. Defendant is entitled to such a hearing under *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), if he makes "a substantial preliminary showing" of perjury or reckless disregard of the truth in the affidavit, provided its remaining content is insufficient to establish probable cause.

Defendant identifies two purported inaccuracies in the affidavit of Agent Temple. First, he denies that defendant ever discussed the transportation of guns to New York with the Flea Market proprietor, and more specifically, contends that the defendant never stated during the recorded conversation of February 9 "that he would be leaving Saturday morning to take the guns to New York." Temple Aff. ¶ 6.[1] Second, defendant contends that the affidavit falsely identifies the box defendant placed in his car the morning of his arrest as the same box he had picked up from the Flea Market the previous night. Temple Aff. ¶ 6–7.

■ The Court is not persuaded by arguments advanced by defendant that there is an indication that Agent Temple knowingly or intentionally made any false statements of fact or material omissions in his affidavit. There is a presumption of validity with respect to affidavits supporting search warrants. *Franks v. Delaware*, 438 U.S. at 171, 98 S.Ct. at 2684. Defendant has submitted only one self-serving affidavit—his own—in support of his challenge. "To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine." *Id.*

defendant. The conversations, which have been reviewed by the Court, took place on December 29, 1989, and on January 11, 15, 16 and February 9, 1990.

■ As to the first alleged misstatement, the affidavit shows that Agent Temple's assertion that defendant planned to take the guns he had purchased to New York was not intentionally false or recklessly untrue, but rather, was a logical conclusion drawn from the facts known to the agent at the time. When he submitted his affidavit, Agent Temple was aware of the following circumstances surrounding defendant's activities: that guns seized during arrests in New York had been traced to the Flea Market, that prior to December 27, 1989, defendant had purchased hundreds of guns from the Flea Market on a regular basis, that defendant was purchasing handguns from the Flea Market under false sales records, that defendant purchased twenty-one handguns from the Flea Market on the evening on February 9 stating he was leaving for New York the following morning. Given these circumstances, it was perfectly reasonable to conclude, as did the agent in his affidavit, that the defendant intended to deliver the guns he had purchased to persons in New York the next day.

■ The second alleged misstatement was immaterial to the magistrate's finding of probable cause based on the affidavit. The circumstances outlined above amply support a finding of probable cause to believe that defendant's car contained guns when he arrived in New York from Ohio, having purchased twenty-one guns from the Flea Market at 6:00 p.m. the previous evening. The conversation between defendant and the Flea Market proprietor during the February 9 purchase solidify the Court's conclusion. The transcript reveals that defendant purchased a number of guns and requested that some be placed in a box and some be placed in a bag. Tr. at 6. Defendant told the proprietor that "I'll probably take off tomorrow [Saturday] and be back Monday or Tuesday." *Id.* at 5. When asked how long his trip will take, defendant responded, "a good ten hours." *Id.* He further stated that he will go through New Jersey and that "Jersey's only an hour, forty minutes from New York ... that's all, 40–45 minutes and you're in New York." *Id.* Later, defendant again stated that he planned to stay on the New Jersey Turnpike, that the trip will take about eleven hours, and that after being in New Jersey, "I go another forty minutes ... [and] then I go meet who I gotta go meet." *Id.* at 7. Thus, whether the box defendant placed in his car the morning of his arrest was or was not the same box he had carried out of the Flea Market the night before is an immaterial detail not essential to the magistrate's finding of probable cause. Accordingly, defendant's request for a *Franks* hearing is denied.

### 2. Automobile Exception

■ Defendant's motion to suppress is also denied on the grounds that, regardless of the truth of the statements challenged by defendant in Agent Temple's warrant affidavit, the search of his station wagon in New York falls within the automobile exception to the warrant requirement. It is well-settled that the Fourth Amendment does not require the police to obtain a search warrant to search an automobile when they have probable cause to believe it contains contraband or evidence of criminal activity. *Arkansas v. Sanders*, 442 U.S. 753, 760, 99 S.Ct. 2586, 2591, 61 L.Ed.2d 235 (1979); *Chambers v. Maroney*, 399 U.S. 42, 52, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419 (1970).

The automobile exception to the warrant requirement is based not only on the exigent circumstances created by the inherent mobility of automobiles, *see United States v. Chadwick*, 433 U.S. 1, 12, 97 S.Ct. 2476, 2484, 53 L.Ed.2d 538 (1977), but also on the diminished expectation of privacy attending automobiles, *see, e.g., New York v. Class*, 475 U.S. 106, 112–13, 106 S.Ct. 960, 964–65, 89 L.Ed.2d 81 (1986). The automobile exception has consistently been held to justify even warrantless searches performed after the exigent circumstances have lapsed, provided the police could have at some point legitimately searched the vehicle without a warrant. *See Chambers*, 399 U.S. at 52, 90 S.Ct. at 1981; *Florida v. Meyers*, 466 U.S. 380, 104 S.Ct. 1852, 80 L.Ed.2d 381 (1984) (upholding warrantless search of car which had been impounded); *United States v. Benevento*, 836 F.2d 60, 67 (2d Cir.1987) (upholding warrantless search of vehicle

brought to stationhouse even where it could have been searched at roadside).

Under the foregoing authority, ATF's next-day search of the vehicle Della Ratta was driving at the time of his arrest was justified if the ATF agents had probable cause to believe the vehicle contained evidence that defendant was transporting firearms interstate in violation of 18 U.S.C. § 922. The Court finds that the necessary probable cause existed. The ATF agents knew that handguns recovered during arrests in New York had been traced to an Ohio dealership and that Della Ratta had purchased over 500 guns from the same dealership in the span of little over a year. The proprietor informed ATF agents that defendant had mentioned transporting guns to the East and that the two men were engaged in a scheme of obtaining false signatures on sales records for the weapons purchased by defendant. Discussing the scheme on January 15, 1990, Della Ratta emphasizes that the "whole key" is to "tell them the, ah, did it at the Flea Market, you know what I'm saying, that they sold them." Tr. at 4. The very next day, January 16, the transcripts reveal that defendant inquired about the possibility of obtaining New York licenses, Tr. at 1, and that he "had a couple of New York." *Id.* at 4.

The statements in the transcripts, corroborated by the proprietor's description of earlier conversations, the recovery of guns in New York traced to defendant through the false records scheme and the observations of defendants by ATF agents on February 9 and 10, 1990, provided the agents with probable cause to believe that defendant's vehicle contained evidence of defendant's criminal activity at the time of his arrest.

### III.   CONCLUSION

For the foregoing reasons, the defendant's motion to suppress evidence is denied in its entirety.

SO ORDERED.