STATE OF NEBRASKA, APPELLANT, V. DEANDRA A. BUTLER,
APPELLEE.
471 N.W.2d 447

Filed July 5, 1991.   No. 91-175.

Charles W. Campbell, York County Attorney, for appellant.

L. William Kelly, of Kelly & Schroeder, for appellee.

HASTINGS, C.J.

This is an application for review before one judge of this court of an order of the district court suppressing certain evidence seized as a result of the search of defendant's vehicle by an officer of the Nebraska State Patrol. This proceeding is brought under the provisions of Neb. Rev. Stat. § 29-824 (Reissue 1989).

On October 7, 1990, an automobile being driven by Roger Collins on Interstate 80 in York County was stopped by Nebraska State Patrol Trooper James Brady, who is also a "state deputy sheriff," after being clocked at 86 miles per hour. Following the stop, the driver presented a California driver's license, portions of which had been obliterated; a California identification card; and a Social Security card which bore a different Social Security number than the identification card.

After having learned that the automobile was registered to the defendant, Deandra A. Butler, who was a passenger in the car, the trooper was provided by Butler with identification in the form of a Michigan driver's license.

Collins was advised by the trooper of the violation for speeding. An "NCIC check" revealed that Collins had a valid California driver's license, but that his driving privileges had been suspended in Michigan. The check also revealed that Butler's driving privileges had been suspended in Michigan.

Collins was then asked to step from the automobile, and he was arrested and handcuffed for having possession of an altered driver's license and for driving while his driving

privileges had been suspended in Michigan.

The trooper then asked Butler to exit the car, and he was searched and handcuffed by the trooper. Butler was advised that he was not under arrest, but was being detained for security purposes.

In the meantime, according to the trooper, Deputy Perry arrived at the scene. Brady made a cursory search of the vehicle to check for weapons or obvious contraband. Nothing was seized by the trooper.

Because both occupants of the vehicle, which was parked on or alongside the highway, were not legally capable of driving, a wrecker was ordered to tow in the vehicle. The vehicle was towed to the business place of the wrecking service, where it was inventoried by Brady and Trooper Reggie Ayers.

According to Brady, in line with patrol policy, an inventory of vehicle form, NSP 710, was used. The officers went through the vehicle specifically to pick out the valuable items to make sure that they were accounted for and that they were there when the property was to be picked up by the owners.

The passenger compartment and the trunk were inventoried. The inventory form revealed that in the passenger compartment were such items as clothing; stereo tapes; toilet articles; $400 in cash; a brown wallet with the identification of the defendant in it, which wallet contained a folded paper containing a white powdery substance suspected to be cocaine; and, on the floor in the back seat, a plastic shopping bag within which was a smaller white paper bag containing a small amount of suspected marijuana. The powdery substance was field tested and was positive for cocaine.

The inventory of the trunk disclosed bundles of cash, wrapped in rubberbands, "sitting loose in the trunk" and totaling $3,100, and a red mechanic's oil cloth containing a Smith and Wesson .38-caliber snub-nosed revolver loaded with six rounds of ammunition. An NCIC check revealed that the revolver had been stolen in 1973 from a man in Elkhart City, Indiana.

Trooper Brady testified during cross-examination that he had "looked inside" the trunk of the automobile at the scene of the stop and had seen the large amount of cash. According to

the trooper, although he might not have considered the cash to be contraband, "[i]t raised my suspicions."

It is apparent that it was those items of contraband found in the inventory search which were ordered suppressed by the order of the district court.

The defendant does not question the legality of the arrest of Collins and concedes that such arrest authorized a search of the vehicle. He admitted that during argument to the trial court. The law supports that conclusion. However, it is the second search, at the place to which the vehicle was towed, to which he objects.

This appeal may be disposed of on the basis that the contraband was revealed and seized as the result of an inventory search. In *Florida v. Wells*, ____ U.S. ____, 110 S. Ct. 1632, 109 L. Ed. 2d 1 (1990), although the Court held in that instance that the search was insufficiently regulated so as to satisfy the fourth amendment, the search was invalid because the Florida police had no policy with regard to opening closed containers during inventory searches. Although there is no issue as to opening closed containers in this case, the same rationale applies in conducting the search in the first place.

Excerpts from the Nebraska State Patrol policy manual provide as follows:

VIII. Inventory and Storing of Vehicles

A. Officers have the authority to tow-in or impound a motor vehicle when:

1. It is an obstruction or a traffic hazard.

. . . .

4. The person driving or in control of such vehicle is arrested and taken into custody and the vehicle is not lawfully parked at the subject's residence.

5. An arrested driver who is not under the influence of alcohol or a controlled substance or is not otherwise impaired should be allowed to provide for lawful and responsible disposition of the vehicle, provided, such disposition does not delay the officer in the performance of his/her duties.

B. When any vehicle is towed in, regardless of the reason, by an officer of the Nebraska State Patrol, that officer . . . shall also inventory the contents of that vehicle

on the inventory (NSP 710).

A fair reading of the testimony in this situation would seem to fit the facts within the inventory exception to the rule prohibiting warrantless searches.

In this case, the automobile was parked on or alongside the highway, which fact in and of itself would suggest that it constituted a traffic hazard under provision VIIIA1. The person driving the automobile was arrested and the vehicle was not lawfully parked at "the subject's residence," as provided for in VIIIA4. It is possible to read VIIIA5 in such a manner that one could determine that the driver, by not having lawful driving privileges in Nebraska because of his suspension in Michigan, was "otherwise impaired" so that he need not have been "allowed to provide for lawful and responsible disposition of the vehicle . . . ." Nevertheless, there is nothing in the record that such driver, or the owner for that matter, sought to provide for such disposition and was turned down.

Therefore, on the face of it, the facts fit the formal policy of the Nebraska State Patrol. Additionally, that same policy requires that when any vehicle is towed in, the officer shall inventory the contents of that vehicle on form NSP 710.

In *South Dakota v. Opperman*, 428 U.S. 364, 96 S. Ct. 3092, 49 L. Ed. 2d 1000 (1976), the Supreme Court upheld a warrantless search of a car impounded for various parking violations. Following standard police procedure, the police inventoried the contents of the automobile and found and seized certain contraband. The Supreme Court reversed the decision of the South Dakota Supreme Court and held that under the fourth amendment, inventories pursuant to standard police procedures are reasonable.

The Supreme Court cited with approval the following language from *United States v. Gravitt*, 484 F.2d 375 (5th Cir. 1973), *cert. denied* 414 U.S. 1135, 94 S. Ct. 879, 38 L. Ed. 2d 761 (1974): " '[W]hen the police take custody of any sort of container [such as] an automobile . . . it is reasonable to search the container to itemize the property to be held by the police. [This reflects] the underlying principle that the fourth amendment proscribes only *unreasonable* searches.' " (Emphasis in original.) 428 U.S. at 371.

The Court went on to say: "The Vermillion police were

indisputably engaged in a caretaking search of a lawfully impounded automobile. . . . As in *Cady* [*v. Dombrowski*, 413 U.S. 433, 93 S. Ct. 2523, 37 L. Ed. 2d 706 (1973)], there is no suggestion whatever that this standard procedure, essentially like that followed throughout the country, was a pretext concealing an investigatory police motive." 428 U.S. at 375-76.

Butler contends there is a "one search only" rule which has been fashioned by the U.S. Supreme Court. This is not correct. In *Florida v. Meyers*, 466 U.S. 380, 104 S. Ct. 1852, 80 L. Ed. 2d 381 (1984), the Court reversed a ruling of the Florida District Court of Appeal which had ordered evidence suppressed which had been seized in an inventory search conducted some 8 hours after an initial search as a part of an arrest. The Supreme Court said:

> The District Court of Appeal either misunderstood or ignored our prior rulings with respect to the constitutionality of the warrantless search of an impounded automobile. In *Michigan v. Thomas*, 458 U.S. 259 [102 S. Ct. 3079, 73 L. Ed. 2d 750] (1982), we upheld a warrantless search of an automobile even though the automobile was in police custody and even though a prior inventory search had already been made. That ruling controls the disposition of this case. In *Thomas*, we expressly rejected the argument accepted by the District Court of Appeal in the present case, noting that the search upheld in *Chambers* [*v. Maroney*, 399 U.S. 42, 90 S. Ct. 1975, 26 L. Ed. 2d 419 (1970),] was conducted "after [the automobile was] impounded and [was] in police custody" and emphasizing that "the justification to conduct such a warrantless search does not vanish once the car has been immobilized." 458 U.S., at 261. The District Court of Appeal's ruling that the subsequent search in this case was invalid because the car had been impounded is clearly inconsistent with *Thomas* and *Chambers*.

466 U.S. at 382.

The judgment of the district court in sustaining defendant's motion to suppress is reversed, and the cause is remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.