UNITED STATES of America Plaintiff

v.

Juan Carlos **MENDOZA ROLON,** Jose O. Ramos Berrios, German Ayala Ramos, Sealed Defendant Defendants

No. CR. 04–194(SEC).

United States District Court, D. Puerto Rico.

July 12, 2004.

Antonio R. Bazán–González, AUSA, United States Attorney's Office, San Juan, PR, for Plaintiff.

Ricardo Izurieta–Ortega, Esq., Luis R. Rivera–Rodriguez, Esq., Oviedo E. Zayas–Pérez, Esq., San Juan, PR, for Defendants.

## OPINION AND ORDER

CASELLAS, District Judge.

Before the Court is Co-defendant Ramos Berríos' motion to suppress evidence and any incriminating statements (**Docket # 33**). The remaining Co-defendants have moved to adopt and join the arguments purported in said motion (**Docket # 37**). Defendants contend that U.S. Customs agents made an illegal arrest and conducted a warrantless search of a motor vehicle which resulted in the seizure of eight (8) kilograms of cocaine. In essence, Defendants aver that Co-defendant Ramos Berríos' consent to search the motor vehicle was overborne by the Customs agents and that any incriminating statements made by said Co-defendant were obtained through the use of intimidation and/or coercion. The Government has opposed Defendants' requests (**Docket # 34**). After carefully examining the parties' arguments, the factual background surrounding the case and the applicable law, Defendants' motion to suppress will be **DENIED**.

### Background

In the instant case, federal authorities received information from a confidential informant that Juan Carlos Mendoza Rolón, a defendant in this case, was involved in a "money laundering and drug trafficking organization." On April 17, 2004, the U.S. Customs and Border Protection Contraband Enforcement Team identified three subjects carrying large amounts of money to the Dominican Republic. These three individuals were Juan Carlos Mendoza Rolón carrying $9,160.00; David Mendoza Rolón, with $9,000.00; Germán Ayala who reported $4,990.00. They traveled to the Dominican Republic on board American Airlines Flight # 699. All three informed that this was a "pleasure" trip and that they would be returning on April 19, 2004. The Government's confidential source explained that the narcotics, which were to be purchased by these subjects from a source also known to the Government, would be hidden inside a motor vehicle and shipped to Puerto Rico.

Thereafter, several telephone conversations between the confidential informant and the Dominican source of narcotics and between the confidential informant and Juan Carlos Mendoza Rolón were monitored to corroborate the different overt acts of the conspiracy charged in the indictment. On April 23, 2004, the confidential source informed that the narcotics loaded vehicle had arrived in Puerto Rico

without being detected and had been stored at an unknown location. The informant further expressed that on April 24, 2004, the source of narcotics, Esteban Urbaez would travel to Puerto Rico to personally complete the transaction dealing with the narcotics. The U.S. Passenger Analytical Unit confirmed that, on that same date, a passenger identified as Esteban Urbaez arrived to Puerto Rico on board American Eagle Flight # 5347.

On April 24, 2004, the U.S. Customs agents initiated surveillance of Esteban Urbaez. They followed him to Jardines de Berwind Housing Project. Later on during the course of the surveillance, the agents observed that Urbaez was at the corner of Zurana Street and the Jardines de Berwind main entrance. At that point in time, Urbaez boarded a gold colored Toyota vehicle, driven by an individual later identified as Co-defendant José Ramos Berríos. Co-defendants Juan Carlos Mendoza Rolón and German Ayala were already in that vehicle. After several minutes of conversation between the subjects, Urbaez left the vehicle. Co-defendant Jose Ramos Berríos then drove the gold colored Toyota accompanied by Juan Carlos Mendoza Rolón and Germán Ayala to a location at Campo Rico Avenue. Thereafter, the individuals separated and left the aforesaid premises in three different cars. Juan Carlos Mendoza Rolón left in a champagne color Mazda 6, Germán Ayala drove a gold colored Toyota registered to Ramos Berríos, and José Ramos Berríos drove a green colored Ford Escort station wagon. Custom agents observed that the Mazda 6 and the gold colored Toyota appeared to be escorting the Ford Escort Station Wagon. In addition, the agents noticed that this last vehicle matched the description provided by the confidential source which indicated that this was the vehicle that would be used to smuggle the narcotics. In light of this, the agents contacted the U.S. Customs and Border Patrol Agents of the Mayaguez seaport who confirmed that this same vehicle ( the Ford Escort) had arrived at Mayaguez the day before (April 23, 2004) on the ferry traveling from the Dominican Republic.

Based on the corroborated information at hand, the agents took the decision to stop the three vehicles and their respective occupants for investigative purposes and took them to the Luis Muñoz Marín Airport station for further questioning. José Ramos Berríos was interviewed after he had waived **in writing** his constitutional rights. During said interview, Ramos Berrios denied ownership of the car. He claimed that he was a mechanic and that he was testing the vehicle to see if he would purchase it. Notwithstanding the denial of ownership of the Ford Escort station wagon, he voluntarily consented to the search of the same. Upon inspection of the vehicles, a canine (K–9) unit alerted positive for narcotics on the Ford Escort station wagon. Thereafter, a probe on the side rail of the vehicle came out with a white powdery substance that reacted positive to cocaine. The yield of the search was approximately eight(8) kilograms of cocaine secreted in the side rails of the chassis of said motor vehicle. Consequently, all individuals were placed under arrest.

### Applicable Law and Analysis

■ We first note that, in the instant case Co-defendant Ramos Berríos asserts that his consent to search the vehicle was overborne by the Customs agents. The First Circuit Court of Appeals requires that a defendant who moves to suppress evidence allegedly obtained through intimidation or coercion present evidence to that effect. *U.S. v. Calderon,* 77 F.3d 6, 9 (1st Cir.1996)("the burden is on defendant to allege facts, sufficiently definite, specific

detailed and non conjectural, to enable the Court to conclude that a substantial claim is presented"). Thus, in consent or waiver cases, an affidavit or statement under penalty of perjury in support of the motion to suppress, or some other evidence aside from counsel's allegations on behalf of defendant, is required. *U.S. v. Licea,* 166 F.3d 1219, 1999 WL 14297 (9th Cir.1999); *U.S. v. Council,* 1998 WL 132766 (E.D.La. 1998). In the case at hand, apart from defense counsel's assertions of misconduct by Custom officers, Co-defendant has failed to present any evidence indicating that his will was in fact overborne or coerced and/or how this was achieved. Notwithstanding, we shall proceed to examine and discuss the allegations brought forth by Co-defendant Ramos Berríos.

■ The Fourth Amendment commands that searches and seizures be reasonable. What is reasonable depends upon all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself." *U.S. v. Montoya de Hernandez,* 473 U.S. 531, 105 S.Ct. 3304, 87 L.Ed.2d 381 (1985); *see also New Jersey v. T.L.O.,* 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985). The permissibility of a particular law enforcement practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests. *Id. citing United States v. Villamonte Marquez,* 462 U.S. 579, 103 S.Ct. 2573, 77 L.Ed.2d 22 (1983); *Delaware v. Prouse,* 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979); *Camara v. Municipal Court,* 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967).

■ The warrant and probable cause requirements of the Fourth Amendment are not absolutes that must be complied with in each set of facts. The Supreme Court of the United States has established that the Fourth Amendment does not require that law enforcement officers obtain a search warrant to search an automobile moving in traffic when they have probable cause to believe it contains contraband or evidence of other criminal activity. *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). *See also Chambers v. Maroney,* 399 U.S. 42, 46–52, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *U.S. v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982); *U.S. v. Cleveland,* 106 F.3d 1056 (1st Cir.1997); *U.S. v. Staula,* 80 F.3d 596, 602 (1st Cir.1996); *U.S. v. Martinez–Molina,* 64 F.3d 719, 730 (1st Cir. 1995).

■ The "automobile exception" to the warrant requirement stems from, in large part, the exigent circumstances created by the inherent mobility of vehicles. *See Pennsylvania v. Labron,* 518 U.S. 938, 116 S.Ct. 2485, 135 L.Ed.2d 1031 (1996). Vehicle searches performed after exigent circumstances have lapsed are valid provided that probable cause to legitimately search the vehicle existed at some prior point. *Coolidge v. New Hampshire,* 403 U.S. 443, 460, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *Florida v. Meyers,* 466 U.S. 380, 104 S.Ct. 1852, 80 L.Ed.2d 381 (1984); *U.S. v. Maguire,* 918 F.2d 254 (1st Cir.1990); *See U.S. v. Martin,* 690 F.2d 416 (4th Cir.1982) (upholding warrant-less vehicular search for contraband based on informant's tip).

In the instant case, at the time the agents decided to stop the Ford Escort, the law enforcement agents had probable cause to search the vehicle in question because (1)the informant had informed the Customs agents that the vehicle (Ford Escort) had arrived from the Dominican Republic in the Ferry and gone undetected, (2) the agents had already heard three recorded telephone conversations involving the Dominican source of cocaine and the recipient (Co-defendant Mendoza Rolón), (3) Co-defendants Mendoza Rolón and

Ayala Ramos had traveled to the Dominican Republic a week before and reported big amounts of money to the U.S. Customs outbound unit, (4) the source of the cocaine had arrived from the Dominican Republic and had been kept under surveillance, (5) said source was observed meeting with Juan Carlos Mendoza Rolón, Germán Ayala Ramos and Jose Ramos Berríos,(6) after meeting with the Dominican source of the narcotics, the three Co-defendants in this case drove in Ramos Berríos' Toyota to another location to pick the Ford Escort where Ramos Berríos was observed switching vehicles and boarding the target vehicle while Germán Ayala drove the Toyota and Juan Carlos Mendoza drove a Mazda 6 and, (7) both Co-defendants Mendoza Rolón and Ayala Ramos, were observed as providing escort to Ramos Berríos as he drove the Ford Escort station wagon. Under the applicable law, these circumstances set forth sufficient facts that establish probable cause to legitimately stop and search the vehicle in question. As such, the intervening agents, under the totality of the circumstances, had probable cause to detain and arrest Defendants. The Government has shown that at the time of the detention, the facts and circumstances known to the arresting officers were sufficient to warrant a prudent person in believing that Defendants had committed or were committing an offense. *U.S. v. Torres–Maldonado,* 14 F.3d 95 (1st Cir.1994).

■ In his motion Co-defendant also argues there is no meaningful "temporal or spatial" relation for the search of the vehicle at the airport facility since more than 24 hours had elapsed since it had arrived to Puerto Rico. However, since we have already established the existence of probable cause to search the Ford Escort station wagon, no "temporal or spatial" limitation can be applied to the case at hand. In

*Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970) the Court validated the search of an automobile by law enforcement agents after its removal to a police station because probable cause and exigent circumstances existed immediately after the defendants were arrested, but darkness at the location of arrest prohibited a search of the vehicle. Similarly, in this case, law enforcement agents, justified by probable cause and exigent circumstances inherent in the mobility of the vehicle, promptly moved the Ford Escort station wagon to the airport facility for the corresponding search. We find that there were legitimate reasons to move the vehicle such as the safety of the agents who were to conduct the search, the safety of the public who might congregate if a search of a car is conducted in a public road and of course, the concern that other members of the organization could be in the area. Furthermore, the fact that the agents had information indicating that the narcotics would be hidden in some compartment of the vehicle made it reasonable to conclude that the search and eventual extraction of the narcotics would take some time.

■ In addition, in the instant case Co-defendant Ramos Berríos has yet to make a claim of a possessory interest in the evidence seized from him. A defendant can request the suppression of evidence obtained in violation of the Fourth Amendment only when he demonstrates that his Fourth Amendment rights were violated by the challenged search and seizure. *United States v. Padilla,* 508 U.S. 77, 81, 113 S.Ct. 1936, 123 L.Ed.2d 635 (1993); *United States v. Al Talib,* 55 F.3d 923, 930 (4th. Cir.1995). The fact that he was aggrieved by the search and the damaging evidence in itself is insufficient to request suppression of the evidence. *Padilla,* 508 U.S. at 81, 113 S.Ct. 1936. The

defendant must show that he had an interest in the property seized and an expectation of privacy at the time of the search. In *Rakas v. Illinois,* the U.S. Supreme Court held that petitioners, who asserted neither a property nor a possessory interest in the automobile searched nor an interest in the property seized, and who failed to show that they had any legitimate expectation of privacy in the glove compartment or area under the seat of the vehicle in which they were merely passengers, were not entitled to challenge the search of those areas. *Rakas v. Illinois,* 439 U.S. 128, 148, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). The factors that a court must take into account prior to deciding whether the defendant requesting the suppression had the expectation of privacy that grants him/her the standing to request the suppression include: 1) legitimate presence in the area searched; 2) prior use of the area searched or the property seized; 3) possession or ownership of the area searched or the property seized; 4) ability to control or exclude other's use of the property; and 5) a subjective expectation of privacy. *United States v. Lochan,* 674 F.2d 960, 965 (1st Cir.1982). In the instant case, Defendants have failed to meet these standards.

Finally, as to the suppression of any incriminating statements made by Co-defendant Ramos Berríos, we note that said Co-defendant has not pointed to any specific statements made by him that could possibly incriminate him. Therefore, we find that, at this time said Co-defendant has failed to set forth an effective argument regarding incriminating statements.

### Conclusion

For the reasons set herein, Defendants' motion to suppress is hereby **DENIED.**

**SO ORDERED.**