**NOT RECOMMENDED FOR PUBLICATION**

File Name: 21a0040n.06

Case No. 20-1212

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
Jan 21, 2021
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN |
| | ) | |
| MICHAEL ALAN NUYEN, | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE: BOGGS, SUTTON, and NALBANDIAN, Circuit Judges.

SUTTON, Circuit Judge. After police arrested Michael Nuyen for drug possession and impounded his truck, they found out that an informant had seen Nuyen hide drugs and guns underneath his truck. They searched Nuyen's truck and found a pistol attached to the undercarriage. The district court denied Nuyen's motion to suppress the evidence. Nuyen was subsequently convicted in federal court and now appeals. We affirm.

In February 2019, a Kalamazoo resident called 911 to report a truck parked at a condemned house. A police officer went to the house and found the truck in the driveway with Michael Nuyen nearby. The officer saw a glass pipe through the windshield and asked Nuyen if he could search him. Nuyen consented. After finding another glass pipe containing white residue in Nuyen's pocket, the officer arrested Nuyen.

Suspecting that more drugs might be in the truck, the officer searched it and found three plastic bags of methamphetamine. He took Nuyen to the local jail and impounded his truck.

The Kalamazoo Valley Enforcement Team (an intergovernmental law enforcement unit), as it turned out, already knew about Nuyen, whom they suspected of selling meth and carrying a gun. One of their regular confidential informants had seen Nuyen concealing drugs and guns under his truck. After Nuyen's arrest, the team learned that he was making calls from jail, urgently trying to get someone to retrieve his truck from the impound lot. The team sent officers to conduct a more thorough search of the truck, particularly its undercarriage. They found a nine-millimeter pistol secured to the truck's underbody.

After being charged with several drug and gun offenses, Nuyen filed a motion to suppress the pistol, arguing that the officers needed a warrant before searching his impounded truck. After an evidentiary hearing, the district court denied Nuyen's motion. At trial, a jury found Nuyen guilty on all counts. Nuyen appeals.

The Fourth Amendment generally requires police to obtain a warrant before searching property. U.S. Const. amend. IV; *California v. Carney*, 471 U.S. 386, 390 (1985). But there are exceptions to this requirement. One of them is the "automobile exception." *California v. Acevedo*, 500 U.S. 565, 578 (1991). It allows officers to conduct a warrantless search of a vehicle if they have probable cause. *Id.* at 569. Probable cause requires "a fair probability that contraband or evidence of a crime will be found in a particular place." *Bailey v. City of Ann Arbor*, 860 F.3d 382, 387 (6th Cir. 2017) (quotation omitted); *see District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018). A confidential tip, corroborated by independent investigation, can suffice, *United States v. Lumpkin*, 159 F.3d 983, 986 (6th Cir. 1998), as probable cause is "not a high bar," *Wesby*, 138 S. Ct. at 586 (quotation omitted).

Kalamazoo's police officers had probable cause that contraband was affixed to the bottom of Nuyen's truck. Consider what they knew. An initial search of the truck turned up three bags of meth. Nuyen was tied to drug dealing and gun possession. A reliable confidential informant had seen Nuyen hide drugs and guns underneath the truck. And after his arrest, Nuyen urgently tried to get the truck out of the impound lot, even though it had already been searched. All in all, this knowledge gave the officers probable cause, a fair probability that drugs or firearms would be found under the truck.

The Supreme Court and our court have reached the same outcome in similar circumstances. In *Florida v. Meyers*, the Court held that comparable probable cause allowed the police to conduct a warrantless search of an impounded vehicle. 466 U.S. 380, 382–83 (1984) (per curiam). *Meyers* presented nearly identical circumstances. The police arrested someone. They searched his vehicle and seized several items. They impounded the vehicle. Then they searched the car for a second time without a warrant and found additional evidence. *Id.* at 380. The Court held that no Fourth Amendment violation had occurred. *Id.* at 382–83. In *United States v. Smith*, this court likewise held that the police may conduct a warrantless search of a vehicle even if they have the keys and the car is in their custody. 510 F.3d 641, 650 (6th Cir. 2007).

These cases go a long way to answering Nuyen's protest that one justification for the automobile exception—that cars can be moved—does not apply when the police have custody over a vehicle and the suspect no longer can move it. As *Meyers* and *Smith* show, ready mobility is a sufficient, not a necessary, justification for the automobile exception. Recent Supreme Court decisions demonstrate that another justification applies to impounded vehicles with full force. Because vehicles are heavily regulated and impounded vehicles are no longer in the control of the owner, people have a reduced expectation of privacy in them. *See Collins v. Virginia*, 138 S. Ct.

1663, 1669–70 (2018). That explains why the automobile exception applies even to vehicles not at risk of being moved. *See, e.g.*, *Meyers*, 466 U.S. at 382; *Cardwell v. Lewis*, 417 U.S. 583, 593 (1974).

Nuyen's argument—that the police should have put a hold on removing his vehicle from the impound lot and then obtained a warrant—also fails to account for the reality that a hold would not prevent police officers (and perhaps others) from accessing the truck's undercarriage and removing the pistol in the interim. All a hold on the vehicle at the impound lot could guarantee, so far as the record shows, is that the truck would not be moved from the impound lot.

One loose end dangles. Nuyen separately argues that a gun found at his house with a search warrant was "fruit of the poisonous tree" of the unlawful search of Nuyen's truck. But the lawfulness of the truck search eliminates any poisonous fruit to worry about.

We affirm.