11-2988-cr
United States v. Pascual

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 13th day of November, two thousand twelve.

PRESENT:   JOHN M. WALKER, JR.,
                    GERARD E. LYNCH,
                    RAYMOND J. LOHIER, JR.,
                                        *Circuit Judges.*

_____

UNITED STATES OF AMERICA,
                                        *Appellee*,

                    v.                                                        No. 11-2988-cr

 MINERVA PASCUAL,
                                        *Defendant-Appellant,*

ERNESTO BOCANEGRA, HAZEL CRUZ,

                                        *Defendants.*[*]
_____

FOR APPELLANT:          MITCHELL J. DINNERSTEIN, New York, New York.

FOR APPELLEE:           WALTER M. NORKIN, Assistant United States Attorney
                                    (Susan Corkery, *on the brief*), *for* Loretta E. Lynch, United
                                    States Attorney for the Eastern District of New York,
                                    Brooklyn, New York.

_____

[*] The Clerk of the Court is directed to amend the official caption in the case to conform to the caption listed above.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Raymond J. Dearie, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the district court is AFFIRMED.

Defendant Minerva Pascual appeals her conviction, after a jury trial, of conspiring to import and distribute cocaine and her resulting sentence to ten years' imprisonment.[1] Pascual argues principally that the district court erred in: (1) not suppressing evidence seized from her car; (2) declining to give a "missing witness" instruction; and (3) admitting into evidence cell-site records obtained pursuant to a subpoena. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review.

**A. Search of Pascual's Car**

Pascual first argues that the items seized from her car without a warrant on the night of her arrest should have been suppressed. Government agents searched Pascual's car immediately after her arrest in East Harlem and again several hours later, after driving the car to their office at JFK Airport. The district court initially found, after a suppression hearing at which Pascual and the relevant agents testified, that the second search was lawful because Pascual had voluntarily consented to it.

During trial, an agent's testimony brought the circumstances surrounding Pascual's consent into question, and Pascual moved for reconsideration of the district court's decision.

---

[1] Pascual was convicted at her second trial, after the jury at the first trial failed to reach a verdict. All references to "the trial" in this Order are to the second trial.

The government adhered to its position that Pascual had validly consented to the search and argued in the alternative that suppression was not required under the inevitable discovery doctrine. The district court sua sponte suggested that the search might have been justified under the automobile exception. See Carroll v. United States, 267 U.S. 132 (1925). The district court declined to decide the issue during trial, however, and instead deferred the issue to a post-trial conference. Shortly after trial, Pascual submitted a brief arguing that neither the inevitable discovery doctrine nor the automobile exception applied.

At the post-trial conference on Pascual's motion, the district court offered to reopen the suppression hearing so that both sides could submit additional evidence, but the parties declined. After hearing argument, the district court granted the motion for reconsideration and withdrew its finding that Pascual had voluntarily consented to the search, citing troubling inconsistencies in the agents' trial testimony.[2] The district court nonetheless again denied the motion to suppress, finding that "there was probable cause to conduct the search" of Pascual's car.

Pascual makes four arguments that the district court erred in denying her renewed suppression motion. First, she argues that the district court's finding that there was probable cause to believe that evidence of a crime would be found in the car was incorrect. "Under the 'automobile exception' to the Fourth Amendment warrant requirement, police may conduct a warrantless search of a readily mobile motor vehicle if probable cause exists to

---

[2] The district court made clear, however, that it did not find the agents incredible, not withstanding the inconsistencies in their testimony.

3

believe the vehicle contains contraband or other evidence of a crime." United States v. Gaskin, 364 F.3d 438, 456 (2d Cir. 2004); see also United States v. Howard, 489 F.3d 484, 492 (2d Cir. 2007) (same).

Here, the agents had probable cause to believe that Pascual's car contained evidence of a crime. Pascual was arrested shortly after agents arrested her cousin, Hazel Cruz, during a controlled delivery of four kilograms of cocaine by a drug courier from Peru turned confidential informant. The informant, who had thus far accurately described his drug dealings, told the agents that a woman of Pascual's description, in a car that he described, had driven Cruz to a prior drug delivery. Pascual was then found in a car matching the informant's description not far from the drug transaction. Although Pascual was alone in the car, the agents observed multiple cell phones and two purses in plain view in the car. The agents knew that Cruz had not carried a purse to the transaction, suggesting that one of the purses and possibly one or more of the phones belonged to Cruz. Further, an agent testified that one of the bags was open and contained "a white envelope with what looked to be a large sum of money kind of like sitting in there." When asked by agents what she was doing in the car, Pascual responded that she was waiting for her cousin "Hazel," which the agents confirmed was the name of the woman who had just been apprehended taking delivery of the drugs. Given the cumulative effect of this information, the agents clearly had probable cause to believe that evidence of narcotics offenses would be found in the car. See United States v. Gagnon, 373 F.3d 230, 240 (2d Cir. 2004) (holding that automobile exception applied to search of defendant's tractor trailer, where confidential informant who was detained at border

4

with a trailer full of marijuana told agents that he was driving to meet the defendant to exchange trailers, and defendant subsequently arrived at the location described, at the time described, in a tractor with an empty trailer that matched informant's description).

Second, Pascual argues that the scope of the search (which included the search of containers inside the car and the trunk) and its timing (two hours after Pascaul's arrest) exceeded what is permitted by the automobile exception. Under that exception, "[t]he police may search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained." California v. Acevedo, 500 U.S. 565, 580 (1991). "If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." United States v. Ross, 456 U.S. 798, 825 (1982); see also Arizona v. Gant, 556 U.S. 332, 347 (2009) (noting that "[i]f there is probable cause to believe a vehicle contains evidence of criminal activity," the automobile exception "authorizes a search of any area of the vehicle in which the evidence might be found"). The scope of the search was therefore clearly within the boundaries of the automobile exception.[3] The timing of the search of the car at the airport was similarly permissible. Delays in automobile searches of several hours, or even days, have been found constitutional. See United States v. Johns, 469 U.S. 478, 487-88 (1985)

---

[3] Because the search was authorized by the automobile exception, we do not need to address Pascual's argument that certain aspects of the search were not justified by the search incident to arrest exception. While the district court did discuss Gant at the status conference, it ultimately held that "there was probable cause to conduct the search" of the vehicle pursuant to the separate and conceptually distinct automobile exception, and therefore the limitations placed on searches incident to arrest do not apply. See Gant, 556 U.S. at 347 (noting that the "scope of the search authorized [by the automobile exception] is broader" than that authorized in searches incident to arrest).

(holding that delay of three days "was reasonable and consistent with our precedent involving searches of impounded vehicles"); United States v. Harwood, 998 F.2d 91, 97 (2d Cir. 1993) (holding that delay of "several hours after [the vehicle] was seized" was reasonable).

Third, Pascual argues that the case must be remanded for further factfinding, because the district court did not find sufficient specific facts to support its probable cause determination. We have remanded for further factfinding where the factual record was incomplete,[4] or where the district court's probable cause finding lacked clarity.[5] Neither of those concerns is present here. The district court made its finding after a full suppression hearing, two trials, and multiple rounds of briefing by both parties, both of whom declined an opportunity to present additional evidence. While the district court could have further elaborated its finding, its holding and its legal justification were perfectly clear.

Fourth, Pascual argues that the government waived its claim that the search was supported by probable cause by failing to assert that theory in any of its submissions. Pascual argues that Federal Rule of Criminal Procedure 12(e) "essentially forbids the court from relying on a theory that the Government failed to ever assert." However, Rule 12 on

---

[4] See United States v. Gaines, 457 F.3d 238, 244 (2d Cir. 2006) (remanding where district court made "anomalous and incomplete" factfindings); United States v. Pena, 961 F.2d 333, 337 (2d Cir. 1992) (remanding where record did not allow the panel to determine whether the defendant had a reasonable expectation of privacy in the car being searched); United States v. Gorski, 852 F.2d 692, 696 (2d Cir. 1988) (remanding where there was no evidence that it was inevitable that an inventory search would be conducted).

[5] See United States v. Matsushita, 794 F.2d 46, 49 (2d Cir. 1986) (remanding where it was unclear whether the district court's probable cause finding referred to the initial seizure or the defendant's eventual arrest at the police station).

its face applies only to motions, not arguments by the party opposing a Rule 12 motion. The cases cited by Pascual are unpersuasive, as they involve district courts using their discretion to manage their dockets by preventing parties from raising new issues on the eve of trial. See United States v. Melendez, No. 10 cr. 145, 2010 WL 4323607 (E.D. Cal. Oct. 25, 2010); United States v. Reyes, No. 91 cr. 56S, 1993 WL 8775 (W.D.N.Y. Jan. 13, 1993), aff'd, 999 F.2d 536 (2d Cir.1993); United States v. Ramos, 753 F. Supp. 75, 80 (W.D.N.Y. 1990). That is a far cry from an appellate court *barring* a district court from considering an argument that became relevant only because the district court reversed its original decision post-trial based on new evidence. Pascual cites no case, and we have found none, supporting the remarkable proposition that probative evidence should be suppressed not because police officers violated the Constitution, but because the prosecutor failed to cite the correct precedent that established the legality of the officers' actions. Pascual's argument that the district court "misspoke" when it ruled that there was probable cause to support the search, is fanciful.

**B.      Missing Witness Instruction**

Pascual next argues that the district court erred by declining to give a missing witness instruction, given the government's failure to call Agent Michael Fernandez, the arresting officer, as a witness at trial. "A missing witness charge invites the jury to draw an adverse inference against a party that fails to call a witness whose production . . . is peculiarly within [its] power." Gaskin, 364 F.3d at 463 (alterations in original) (internal quotation marks omitted).

We reverse a refusal to give a missing witness instruction "only upon a showing of both abuse of discretion and actual prejudice." Id. (citation omitted).  A district court's "failure to give the instruction rarely warrants reversal." United States v. Slaughter, 386 F.3d 401, 403 (2d Cir. 2004) (internal quotation marks omitted).  The "considerable discretion" granted to district court acknowledges the fact that "an 'aura of gamesmanship' frequently accompanies requests for missing witness charges." Gaskin, 364 F.3d at 463, quoting United States v. Mittelstaedt, 31 F.3d 1208, 1216 (2d Cir. 1994).

Pascual's argument bears just such an aura: the government notes that at Pascual's request, Fernandez was in the courthouse and available to Pascual to testify during trial, but Pascual did not call him.  Further, the district court permitted Pascual to argue in summation that the jury should draw an adverse inference against the government for failing to call Fernandez.  See United States v. Torres, 845 F.2d 1165, 1171 (2d Cir. 1988) (noting that "where a judge refrains from commenting on the inference to be drawn on the facts before the jury and allows counsel instead to argue the inference, the wisdom of a reversal is even more suspect").  Under these circumstances, the district court was well within its discretion in deciding not to give a missing witness instruction.

**C.     Cell Phone Location Records**

Finally, Pascual argues that the district court improperly admitted cell-site records secured pursuant to a subpoena, without a warrant or a showing of probable cause.  Pascual cites a recent district court opinion finding that a government request for "at least 113 days of cumulative cell-site-location records" constituted a search, and therefore required "a

8

warrant and the requisite showing of probable cause." In re Application of United States, 809 F. Supp. 2d 113, 127 (E.D.N.Y. 2011).

As Pascual did not raise this argument below, we review the district court's decision for plain error. See Fed. R. Crim. P. 52(b). "As a general rule, we reserve a finding of plainness to situations where a trial court's ruling contravenes clearly established precedent." United States v. Brown, 352 F.3d 654, 665 n.10 (2d Cir. 2003). Given this narrow standard of review, we need not reach the merits of Pascual's argument: any error was certainly not plain. In re Application of the United States is (at the very least) in some tension with prevailing case law,[6] and in any event was itself decided well after Pascual's trial. It certainly was not plain error for the district court not to anticipate this innovative argument and sua sponte exclude the evidence, when no governing precedent from this Court or the Supreme Court required exclusion, and the general principles adopted by those courts pointed the other way.

For the foregoing reasons, the judgment of conviction is AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

[6] See Smith v. Maryland, 442 U.S. 735, 742-44 (1979) (holding that a customer has no reasonable expectation of privacy in dialed telephone numbers which were conveyed to the telephone company); United States v. Miller, 425 U.S. 435, 443 (1976) (holding that Fourth Amendment did not "prohibit the obtaining of information revealed to a third party and conveyed by him to Government authorities").