# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-22-00669-CR

---

**Elanna Jena Wilkes, Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM THE 368TH DISTRICT COURT OF WILLIAMSON COUNTY
### NO. 19-0208-K26, THE HONORABLE RICK J. KENNON, JUDGE PRESIDING

---

## O P I N I O N

Appellant Elanna Jena Wilkes was indicted for capital murder but was convicted by a jury of the lesser-included offense of murder and sentenced to life imprisonment. *See* Tex. Penal Code §§ 19.02(b)(3), .03. On appeal, Wilkes challenges the trial court's denial of her motion to suppress evidence. We will affirm the trial court's ruling.

## BACKGROUND[1]

The facts underlying Wilkes' conviction are largely undisputed. On the night of January 20, 2019, Wilkes drove two associates, Cornelius Martin and Darious Burdett-Hornsby, as the three committed a series of armed robberies at apartment complexes in Austin and

---

[1] Because the parties are familiar with the facts of the case, its procedural history, and the evidence adduced at trial, we do not recite them in this opinion except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* Tex. R. App. P. 47.1, .4.

Cedar Park. During the third and final robbery, Burdett-Hornsby shot and killed Austin Burroughs, a 22-year-old airman, in front of his wife.

After learning that Wilkes and Martin had outstanding warrants on unrelated charges, police arrested them in a Wendy's drive-thru on January 24, 2019. Martin was driving Wilkes' car, and Wilkes was in the front passenger's seat. Officers performed a "vehicle assault," pinning the car in place with their own vehicles and immobilizing it. The car was then towed to a secure evidence bay at the Killeen Police Department (KPD). At trial, a KPD officer testified that access to the lot in which the car was stored is monitored 24 hours a day "by video and police surveillance" and that the "actual evidence bay for the vehicles is, again, secured through roller doors in a secured building that has limited access to proximity cards."

On January 29th, DPS investigators conducted a warrantless search of the car. Among the items recovered were a swab from a bloodstain on the back of the front passenger's seat, which subsequent DNA testing suggested was Burroughs', and a phone and credit cards belonging to the first robbery victim.

Following her indictment for capital murder, Wilkes filed an amended motion to suppress all evidence collected as a result of the search together with all "fruits born from that evidence." In her motion, Wilkes argued that there had not been exigent circumstances justifying the search and that officers had not shown that they were unable to obtain a search warrant despite knowing "in advance what vehicle they wanted to search, where it was located, and intend[ing] all along to seize it." Because of their delay, Wilkes asserted, the vehicle exception was inapplicable to the search of her car.

At the hearing on the motion, the State responded that the exception was not rendered inapplicable by the car's being immobilized in the KPD impound lot and that because

2

probable cause to search the car, which was "inherently mobile," had existed at the time of the search, it was covered by the exception. The parties each offered cases from the United States Supreme Court (Supreme Court) in support of their positions.

The trial court denied the motion, and, after a trial, Wilkes was convicted of the lesser-included offense of murder and sentenced to life imprisonment. This appeal followed.

## DISCUSSION

In her only issue, Wilkes contends that the trial court erred by denying her motion to suppress because "the search was not justified under the 'vehicle exception' to the Fourth Amendment."[2] Specifically, she argues that the search of her car was not conducted "as soon as possible" and that exigent circumstances for the search did not exist. In support of her arguments, she cites two decisions from the Supreme Court: *Chambers v. Maroney*, 399 U.S. 42, 51–54 (1970), and *Coolidge v. New Hampshire*, 403 U.S. 443, 462 (1971), *holding modified on other grounds by Horton v. California*, 496 U.S. 128, 138–42 (1990).

We review a trial court's ruling on a motion to suppress for an abuse of discretion. *Swain v. State*, 181 S.W.3d 359, 365 (Tex. Crim. App. 2005) (citing *Balentine v. State*, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002)). In general, we apply a bifurcated standard, giving almost total deference to the trial court's findings of historical fact if they are supported by the record and reviewing de novo the court's legal conclusions and its application of the law to the facts. *See State v. Pena*, 581 S.W.3d 467, 474 (Tex. App.—Austin 2019, pet. ref'd) (quoting

---

[2]   Although Wilkes' motion to suppress also challenged the vehicle search under Article I, Section 9 of the Texas Constitution, she does not raise a state constitutional issue on appeal. *See* Tex. Const. art. I, § 9; *see also Hulit v. State*, 982 S.W.2d 431, 436 (Tex. Crim. App. 1998) ("[O]ur holding means that Section 9 of our Bill of Rights does not offer greater protection to the individual than the Fourth Amendment to the United States Constitution, and it may offer less protection.").

*State v. Le*, 463 S.W.3d 872, 876 (Tex. Crim. App. 2015)). "We review the evidence in the light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact supported in the record." *Id.* "We will sustain the trial judge's decision if it is correct on any theory of law applicable to the case." *Id.* (citing *State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000)).

"Pursuant to the Fourth Amendment, a warrantless search is *per se* unreasonable unless it falls within a warrant exception." *Marcopoulos v. State*, 538 S.W.3d 596, 599 (Tex. Crim. App. 2017); *see Arizona v. Gant*, 556 U.S. 332, 338 (2009). Under the vehicle exception, police can conduct a warrantless search of a vehicle "if it is readily mobile and there is probable cause to believe that it contains contraband."[3] *Pugh v. State*, 624 S.W.3d 565, 570–71 (Tex. Crim. App. 2021) (quoting *Marcopoulos*, 538 S.W.3d at 599).

The vehicle exception was first articulated by the Supreme Court in *Carroll v. United States*, in which it held that officers acted reasonably in searching a stopped car without a warrant because they had probable cause to believe that it was carrying contraband liquor. 267 U.S. 132, 156 (1925). The Court justified the exception on the basis that a "vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought." *Id.* at 153.

The exception was further delimited in *Chambers*, in which police stopped a station wagon suspected of having been used as the getaway car in an armed robbery of a gas station. 399 U.S. at 44. The station wagon's occupants were arrested, and the vehicle was driven to a police station where it was searched. *Id.* The Supreme Court explained that where "the circumstances that furnish probable cause to search a particular auto for particular articles

---

[3] Wilkes does not contest that probable cause existed for the search of her vehicle.

4

are . . . unforeseeable[, and . . .] the opportunity to search is fleeting since a car is readily movable," the search must either "be made immediately without a warrant or the car itself must be seized and held without a warrant for whatever period is necessary to obtain a warrant for the search." *Id.* at 51.

However, while cautioning that "[o]nly in exigent circumstances will the judgment of the police as to probable cause serve as a sufficient authorization for a search," the Court held that because the "probable-cause factor" and the station wagon's mobility "still obtained at the station house," the search there was constitutionally permissible. *Id.* at 52; *cf. Segura v. United States*, 468 U.S. 796, 807 (1984) (noting that *Chambers* "allowed the warrantless seizure to protect the evidence from destruction even though there was no immediate fear that the evidence was in the process of being destroyed or otherwise lost"). The Court elaborated:

> For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment.

*Chambers*, 399 U.S. at 51–52.

The Court's decision in *Chambers* was distinguished a year later by *Coolidge*, 403 U.S. at 458–64. Coolidge was arrested at his home for murder following a multi-week investigation; his car, which was parked in the driveway, was seized pursuant to a defective search warrant, towed to the police station, and searched for the first time two days later. *Id.* at

5

446–48. A plurality[4] of the Supreme Court found that the search was not justified by the vehicle exception. *Id.* at 462. Emphasizing the fact that the car was seized from Coolidge's home, *see Carroll*, 267 U.S. at 153 (contrasting searches of homes with those of conveyances), the Court concluded that there had been no exigent circumstances justifying a warrantless search because the opportunity to search the car was not "fleeting"—it was regularly parked in the driveway; the car was not accessible by Coolidge or his wife at the time of the search; and there was no "contraband or stolen goods or weapons" in it, *Coolidge*, 403 U.S. at 460–62.

We are unable to conclude, as Wilkes argues, that *Coolidge* establishes an exigency requirement for the vehicle exception. First, the portion of *Coolidge* rejecting the exception's applicability under the facts of that case—and to which she directs us—is a plurality opinion to which we are not bound. *Cf. Horton*, 496 U.S. at 136 ("Justice Stewart's analysis of the 'plain-view' doctrine did not command a majority, and a plurality of the Court has since made clear that the discussion is 'not a binding precedent.'" (quoting *Texas v. Brown*, 460 U.S. 730, 737 (1983))); *CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 81 (1987) ("As the plurality opinion . . . did not represent the views of a majority of the Court, we are not bound by its reasoning."). Second, *Coolidge* is distinguishable from the present case because it involved a vehicle that was seized from an individual's private property, and officers did not suspect that weapons or stolen goods were stored in the car. *See Pinkney v. Keane*, 737 F. Supp. 187, 192 (E.D.N.Y. 1990), *aff'd*, 920 F.2d 1090 (2d Cir. 1990) ("[I]f [*Coolidge*] survives today at all, it stands as authority for the narrow proposition that a warrant is required to search an automobile

---

[4] Only four Justices joined the portion of the opinion rejecting the applicability of the vehicle exception. *See Coolidge v. New Hampshire*, 403 U.S. 443, 445 (1971), *holding modified on other grounds by Horton v. California*, 496 U.S. 128, 138–42 (1990).

6

only where entry on to private property is necessary to effectuate the search."). Indeed, the plurality opinion's distinction of *Chambers* serves equally to distinguish this case:

> The rationale of *Chambers* is that given a justified initial intrusion, there is little difference between a search on the open highway and a later search at the station. Here, we deal with the prior question of whether the initial intrusion is justified. For this purpose, it seems abundantly clear that there is a significant constitutional difference between stopping, seizing, and searching a car on the open highway, and entering private property to seize and search an unoccupied, parked vehicle not then being used for any illegal purpose.

*Coolidge*, 403 U.S. at 464 n.20; *see also Cardwell v. Lewis*, 417 U.S. 583, 593 (1974) (plurality op.) (concluding that *Coolidge* was distinguishable because, whereas seizure of Coolidge's car required entry upon private property, "the automobile [in *Cardwell*] was seized from a public place where access was not meaningfully restricted").

Moreover, Wilkes' narrow focus on *Chambers* and *Coolidge* fails to acknowledge the evolution and growth of the vehicle exception in subsequent Supreme Court cases. In early cases—such as *Chambers*—"[t]he 'ready mobility' of vehicles served as the core justification for the automobile exception." *Collins v. Virginia*, 138 S. Ct. 1663, 1669 (2018). Later cases, however, "introduced an additional rationale based on 'the pervasive regulation of vehicles capable of traveling on the public highways.'" *Id.* at 1670 (quoting *California v. Carney*, 471 U.S. 386, 390 (1985)); *see Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996) (observing that "[m]ore recent cases provide a further justification: the individual's reduced expectation of privacy in an automobile, owing to its pervasive regulation"); *South Dakota v. Opperman*, 428 U.S. 364, 368 (1976) (noting that automobiles are "subjected to pervasive and continuing governmental regulation and controls"). Under this rationale, extensive governmental regulation reduces an individual's expectation of privacy in his or her vehicle, providing a distinct basis for

7

"less rigorous warrant requirements." *Carney*, 471 U.S. at 391; *see Florida v. Jardines*, 569 U.S. 1, 14 (2013) ("[W]e have held, over and over again, that people's expectations of privacy are much lower in their cars than in their homes."); *Carney*, 471 U.S. at 391 ("[O]ur later cases have made clear that ready mobility is not the only basis for the exception."); *State v. Cantu*, 776 S.W.2d 728, 731 (Tex. App.—Corpus Christi–Edinburg 1989, pet. ref'd) ("In later cases published after *Carroll*, the United States Supreme Court has recognized another justification for the exception which does not rely on 'mobility.'"); *see also Opperman*, 428 U.S. at 368 ("The expectation of privacy as to automobiles is further diminished by the obviously public nature of automobile travel.").

At the same time as it recognized this novel rationale for the vehicle exception, the Supreme Court clarified—echoing *Chambers*' finding that a car's mobility "still obtained" at the station house—that a vehicle's ready mobility was an inherent quality and not dependent on the risk of its fleeing before police could conduct a search. *See, e.g., Carney*, 471 U.S. at 391 ("Even in cases where an automobile was not immediately mobile, the lesser expectation of privacy resulting from its use as a readily mobile vehicle justified application of the vehicular exception."); *id.* at 393 ("[T]he vehicle is obviously readily mobile by the turn of an ignition key, if not actually moving."); *Opperman*, 428 U.S. at 367 ("[T]he inherent mobility of automobiles creates circumstances of such exigency that, as a practical necessity, rigorous enforcement of the warrant requirement is impossible. But the Court has also upheld warrantless searches where no immediate danger was presented that the car would be removed from the jurisdiction."). As the Court explained in *Cady v. Dombrowski*, a case involving a warrantless search of an impounded car:

8

Although the original justification advanced for treating automobiles differently from houses, insofar as warrantless searches of automobiles by federal officers was concerned, was the vagrant and mobile nature of the former, warrantless searches of vehicles by state officers have been sustained in cases in which the possibilities of the vehicle's being removed or evidence in it destroyed were remote, if not nonexistent.

413 U.S. 433, 441–42 (1973) (internal citations omitted).

Among the cases in which the Court has found that an immobilized car was covered by the vehicle exception are *Michigan v. Thomas*, 458 U.S. 259 (1982) (per curiam); *Florida v. Meyers*, 466 U.S. 380 (1984) (per curiam); and *United States v. Johns*, 469 U.S. 478 (1985).

*Thomas* involved a police search of an impounded car pursuant to department policy; the search uncovered two bags of marijuana in the glove compartment and a loaded .38-caliber revolver hidden in the air vents under the dashboard. 458 U.S. at 260. Citing *Chambers*, the Court noted that it had held that "when police officers have probable cause to believe there is contraband inside an automobile that has been stopped on the road, the officers may conduct a warrantless search of the vehicle, even after it has been impounded and is in police custody." *Id.* at 261. The Court further asserted that:

the justification to conduct such a warrantless search does not vanish once the car has been immobilized; nor does it depend upon a reviewing court's assessment of the likelihood in each particular case that the car would have been driven away, or that its contents would have been tampered with, during the period required for the police to obtain a warrant.

*Id.* (citing *Texas v. White*, 423 U.S. 67 (1975); *United States v. Ross*, 456 U.S. 798, 807 n.9 (1982)). The lower court's holding that "the absence of 'exigent circumstances' precluded a

warrantless search," the Court concluded, "is plainly inconsistent with [its] holdings in *Chambers* and *Texas v. White*." *Id.* at 262.

The Court's ruling in *Thomas* controlled its disposition of *Meyers*, in which, following respondent's arrest, his vehicle was towed to Sunny's Wrecker, where it was impounded in "a locked, secure area." *Meyers*, 466 U.S. at 380, 382. The vehicle was searched twice without a warrant: once at the time of respondent's arrest and a second time eight hours after the vehicle was towed to the compound. *Id.* at 380. The lower court reversed respondent's conviction after determining that "the element of mobility was removed because [respondent's] vehicle had been impounded." *Id.* at 381. Commenting that the lower court had either "misunderstood or ignored [its] prior rulings with respect to the constitutionality of the warrantless search of an impounded automobile," the Supreme Court held that the lower court's "ruling that the subsequent search in this case was invalid because the car had been impounded is clearly inconsistent with *Thomas* and *Chambers*." *Id.* at 382.

In *Johns*, Customs officers seized two pickup trucks at a remote private landing strip as part of a drug-smuggling investigation. 469 U.S. at 480–81. The trucks were taken to DEA headquarters and searched without a warrant; packages were removed from the backs of the trucks and placed in a DEA warehouse. *Id.* Three days later, again without a warrant, officers opened some of the packages and took samples of what later proved to be marijuana. *Id.* The Court found that the Customs officers had probable cause to believe the vehicles and packages contained contraband; that a vehicle search occurred; and that, under the vehicle exception, the search of the packages was reasonable. *Id.* at 482–83, 487–88; *see id.* at 486 ("[T]he fact that a container is involved does not in itself either expand or contract the

10

well-established exception to the warrant requirement recognized in *Carroll*.").  The Court provided the following reasoning for the latter finding:

> The practical effect of the opposite conclusion would only be to direct police officers to search immediately all containers that they discover in the course of a vehicle search.  *Cf. Ross*, 456 U.S. at 807 n.9 (noting similar consequence if police could not conduct warrantless search after vehicle is impounded).  This result would be of little benefit to the person whose property is searched, and where police officers are entitled to seize the container and continue to have probable cause to believe that it contains contraband, we do not think that delay in the execution of the warrantless search is necessarily unreasonable.  *Cf. Cardwell*, 417 U.S. at 592–93 (impoundment and 1-day delay did not make examination of exterior of vehicle unreasonable where it could have been done on the spot); *United States v. Edwards*, 415 U.S. 800, 805–06 (1974) (warrantless search of suspect's clothing permissible notwithstanding delay after initial arrest).

*Johns*, 469 U.S. at 486–87.

In light of both the added rationale for the vehicle exception and its express expansion to cover searches of impounded vehicles—including after some period of delay—the Supreme Court and Texas Court of Criminal Appeals have recognized that the exception now "has no separate exigency requirement."  *Maryland v. Dyson*, 527 U.S. 465, 466–67 (1999); *see id.* at 466 (rejecting lower court's holding that, in addition to probable cause, vehicle exception requires "a separate finding of exigency precluding the police from obtaining a warrant"); *Johns*, 469 U.S. at 484 ("A vehicle lawfully in police custody may be searched on the basis of probable cause to believe that it contains contraband, and there is no requirement of exigent circumstances to justify such a warrantless search."); *Ford v. State*, 305 S.W.3d 530, 545 n.4 (Tex. Crim. App. 2009) ("The automobile exception does not require exigent circumstances."); *Dixon v. State*, 206 S.W.3d 613, 619 n.25 (Tex. Crim. App. 2006) ("[P]olice do not need exigent circumstances before conducting a search of a car."); *State v. Guzman*, 959 S.W.2d 631, 634 (Tex. Crim. App. 1998) ("[W]e hold, as Supreme Court precedent dictates, that the automobile exception to the

Fourth Amendment of the United States Constitution does not require the existence of exigent circumstances in addition to probable cause."); *see also Collins*, 138 S. Ct. at 1683 (Alito, J., dissenting) ("It is settled that the mobility of a motor vehicle categorically obviates any need to engage in such a case-specific inquiry."); *Labron*, 518 U.S. at 944 (Stevens, J., dissenting) ("[A]lthough the court's analysis relied upon our decision in *Chambers v. Maroney*, it cited none of the subsequent cases in which this Court has effectively converted the 'automobile exception' into an absolute rule allowing searches in the presence of probable cause.").

We must next consider Wilkes' remaining argument that the approximately five-day gap between the seizure and search of her car rendered the search unreasonable. In support of her argument that searches must be conducted "as soon as possible," she cites *Chambers* and stresses that the delays in *White*, *Thomas*, and *Meyers* were of shorter duration than that in the present case. *See Meyers*, 466 U.S. at 380 (recounting that vehicle was searched approximately eight hours after being impounded); *Thomas*, 458 U.S. at 261 n.2 (noting only that search occurred on roadside before car had been towed); *White*, 423 U.S. at 67–68 (stating that search took place after respondent was arrested and questioned for 30 to 45 minutes).

Although the Supreme Court has held that "if an immediate search on the street is permissible without a warrant, a search soon thereafter at the police station is permissible if the vehicle is impounded," neither it nor the Court of Criminal Appeals has explained precisely when delay in conducting a search becomes unreasonable. *Ross*, 456 U.S. at 807 n.9. The Supreme Court has, however, provided guidance in evaluating the constitutionality of a delay:

> We do not suggest that police officers may indefinitely retain possession of a vehicle and its contents before they complete a vehicle search. *Cf. Coolidge*, 403 U.S. at 523 (White, J., dissenting). Nor do we foreclose the possibility that the owner of a vehicle or its contents might attempt to prove that delay in the

completion of a vehicle search was unreasonable because it adversely affected a privacy or possessory interest. *Cf. United States v. Place*, 462 U.S. 696 (1983) . . . . [R]espondents have not even alleged, much less proved, that the delay in the search of packages adversely affected legitimate interests protected by the Fourth Amendment. Inasmuch as the Government was entitled to seize the packages and could have searched them immediately without a warrant, we conclude that the warrantless search three days after the packages were placed in the DEA warehouse was reasonable and consistent with our precedent involving searches of impounded vehicles. *See Meyers*, 466 U.S. 380; *Thomas*, 458 U.S. 259; *Cooper v. California*, 386 U.S. 58, 61–62 (1967) (upholding warrantless search that took place seven days after seizure of automobile pending forfeiture proceedings).

*Johns*, 469 U.S. at 487–88.

The Court in *Johns* emphasized that "[t]here is no requirement that the warrantless search of a vehicle occur contemporaneously with its lawful seizure," *id.* at 484, and recalled its instruction in *Thomas* that "the justification to conduct such a warrantless search does not vanish once the car has been immobilized," *id.* (quoting *Thomas*, 458 U.S. at 261). Moreover, as noted, the Court has found delays of three days (*Johns*) and seven days (*Cooper*) to be reasonable under the Fourth Amendment. Indeed, in *Cooper*, the Court asserted that "[i]t would be *unreasonable* to hold that the police, having to retain the car in their custody for such a length of time, had no right, even for their own protection, to search it." *Cooper*, 386 U.S. at 62 (emphasis added); *see also United States v. Pascual*, 502 F. App'x 75, 78–79 (2d Cir. 2012) ("Delays in automobile searches of several hours, or even days, have been found constitutional."); *United States v. Malloy*, 217 F. App'x 342, 345 (5th Cir. 2007) ("Both the Supreme Court and this court have, however, repeatedly held that the automobile exception can

13

justify a warrantless vehicle search even if the police exercise complete control over the vehicle and do not conduct the search immediately.").[5]

Here, Wilkes' car was seized on Thursday, January 24, 2019, and searched on Tuesday, January 29th; thus, the delay between the seizure and search was approximately five days. She has not asserted, nor does the record show, that she attempted to secure the return of her car while it was impounded. On appeal, she does not dispute that probable cause for the search existed or that the vehicle was legally seized and impounded. In light of the Supreme Court's guidance in *Johns* as well as our determination that the probable cause justifying the vehicle's search at the time of Wilkes' arrest "still obtained" at the KPD evidence bay, we do not find that the delay rendered the warrantless search unreasonable. *See Johns*, 469 U.S. at 487–88; *see also Cooper*, 386 U.S. at 61–62; *Cardwell*, 417 U.S. at 592–93; *Sowells*, 2016 WL 3569550, at *3.

Accordingly, the trial court did not err by denying Wilkes' motion to suppress. We overrule her sole issue.

**CONCLUSION**

Having overruled Wilkes' only issue, we affirm the trial court's ruling.

---

[5] At least one of our sister courts has likewise found that delays between the seizure and search of a vehicle are permissible. In *Sowells v. State*, the court of appeals concluded that because officers had probable cause to search a car, the search was reasonable even though "several days" had passed since it was impounded. No. 01-14-00461-CR, 2016 WL 3569550, at *3 (Tex. App.—Houston [1st Dist.] June 30, 2016, pet. ref'd) (mem. op., not designated for publication). Similarly, in *Bowser v. State*, a search conducted the day after a vehicle was towed to the police storage lot was permissible because probable cause "still existed at the station house." No. 01-96-00276-CR, 1998 WL 350098, at *2–4 (Tex. App.—Houston [1st Dist.] June 30, 1998, pet. ref'd) (mem. op., not designated for publication).

_____

Rosa Lopez Theofanis, Justice

Before Chief Justice Byrne, Justices Kelly and Theofanis

Affirmed

Filed:   November 30, 2023

Do Not Publish

15